NORTH MISSISSIPPI SAVINGS & LOAN ASSOCIATION *v.* CONFEDERATE STATES SAVINGS & LOAN ASSOCIATION

No. 43106          July 1, 1964          166 So. 2d 119

*Talbot, Sullivan & Dunbar,* Clarksdale, for appellant.

*Wells, Thomas & Wells, Roland D. Marble,* Jackson, for appellee.

Kyle, P. J.

This case is before us on appeal by North Mississippi Savings & Loan Association, hereinafter referred to as the petitioner or appellant, from a decree of the Chancery Court of Lafayette County affirming an order of the Board of Savings and Loan Associations entered on March 12, 1963, dismissing the petition of the North Mississippi Savings & Loan Association, joined in by Bankers Trust Savings & Loan Association, for a rule or order prohibiting Confederate States Savings & Loan Association No. 6, now known as "Confederate States Savings & Loan Association of Oxford", hereinafter referred to as the respondent, or the appellee, from chang-

ing the location of its home office from Columbus, Mississippi, to Oxford, Mississippi.

The record shows that the appellant, North Mississippi Savings & Loan Association, is a state chartered capital stock savings and loan association which sometime prior to July, 1962, established and since that time has maintained and operated a savings and loan office in the City of Oxford, Mississippi. At the time the appellant established its office in the City of Oxford no other savings and loan association was serving that area, although Bankers Trust Savings & Loan Association, also a state chartered capital stock association, opened an office in Oxford simultaneously with the opening of appellant's office.

The record shows that the appellee, Confederate States Savings & Loan Association No. 6, is also a state chartered capital stock savings and loan association, which, prior to June 29, 1962, was domiciled in the City of Columbus, Mississippi, where it maintained an office and operated its business as a savings and loan association; that on June 29, 1962, the appellee applied for and obtained an amendment to its charter whereby its corporate name was changed to "Confederate States Savings & Loan Association of Oxford," and whereby its domicile was changed from Columbus, Mississippi, to Oxford, Mississippi; that immediately after the approval of said charter amendment appellee leased office space in the City of Oxford and made preparations for the removal of its office furniture and equipment and its books of account to its new location, and on August 1, 1962, opened its office in Oxford for the transaction of business.

On July 1, 1962, Ch. 228, Laws of 1962 (Section 5288-01 to Section 5288-47, Miss. Code of 1942, Rec.), known as "The Savings and Loan Act of 1962" became effective.

The provisions of that act, which are relevant to the issues presented for our decision on this appeal, are as follows:

"Section 6. (a) There is hereby created a Board of Savings and Loan Associations, composed of the attorney general, the state auditor, the secretary of state, the state treasurer and state insurance commissioner. * * *

"* * *

"(e) The Board shall have the power and authority to adopt, promulgate, issue, and rescind rules and enforce orders necessary or appropriate to carry out the provisions of this act. * * *

"Any interested party shall have the right to appeal from any final rule or order of the board to the chancery court of the domicile of the association when the rule or order is so limited in its application as to affect that association only, provided, however, that if the aggrieved association be a nonresident of Mississippi, then the appeal shall be taken to the chancery court of any county in which the said association is doing business. * * *

"The chancery court may affirm such rule or order, or reverse same and remand same to the board for further proceedings as justice may require.

"* * * An appeal may be taken from a final decree of the chancery court to the supreme court as otherwise provided by law.

"(f) The board shall pass upon all petitions for incorporation by a savings association, upon the amendments to charter of incorporation or bylaws, as provided in Section 6 of this act.

"* * *

"(h) Approval of change of location of a home office of an association may be secured by petition to the board, and no location of home office shall be effected in the absence of such approval."

Section 23 of the act provides in part as follows: "* * * Provided, however, that nothing in this act shall be construed to impair or modify any lawful contract, property right or existing charter of any corporation doing business as a savings and loan association on the effective date of this act."

The petition in this cause was filed by the appellant, North Mississippi Savings & Loan Association, with the State Board on July 30, 1962. In its petition the petitioner alleged facts substantially as follows: That petitioners, by letter dated July 26, 1962, had informed the executive officer of the Board of Savings and Loan Associations of the intention of the appellee, Confederate Savings & Loan Association No. 6, as it was then known to petitioner, to relocate its Columbus, Mississippi, office at Oxford, Mississippi, and petitioner had formally notified the Board of its objection to such relocation by Confederate States Savings & Loan Association of its office in the City of Oxford; that in said letter the petitioner had requested that it be advised of the filing of any such application by the Confederate States for approval of such relocation of its office at Oxford, if such application should be filed, and that petitioner be given an opportunity to file its objections to the granting of such petition; that a copy of said letter had been mailed to the Vice President of Confederate States, which at that time was doing business at Columbus, Mississippi; and that on July 27, Confederate States, by its attorneys, had advised the appellant in writing that it did not consider itself subject to the provisions of the Savings and Loan Act of 1962.

In its petition the appellant North Mississippi Savings & Loan Association further alleged that it was engaged in operating a savings and loan association office in the City of Oxford, which had a population slightly in excess of 5,000; that the Bankers Trust Savings & Loan Association was also operating a savings and loan as-

sociation office in the City of Oxford; that two banks had been established and were doing business in the City of Oxford; that the Confederate States Savings & Loan Association No. 6 was subject to the provisions of the Savings and Loan Act of 1962, and could not legally open an office and begin doing business in the City of Oxford as a savings and loan association without the prior approval of the Board; and that petitioner objected to the opening of such office by respondent in the City of Oxford for the following reasons:

(1) That there was no need for another savings and loan association in the area of Oxford;

(2) That the presence of a Confederate States Savings & Loan Association office in the City of Oxford would jeopardize the financial stability of the existing associations presently doing business in Oxford, which were adequately fulfilling the needs of the area; and

(3) That the operation of a savings and loan association by the respondent in the area of Oxford would not benefit said area.

The petitioner therefore requested that its petition be set for hearing and that proper notice be given to the respondent Confederate States Savings & Loan Association, and that upon the hearing of said petition the location of a savings and loan association office in the City of Oxford by the respondent be disapproved and enjoined by the Board.

On August 20, 1962, the matter of the protest of the appellant North Mississippi Savings & Loan Association against the change in location of the home office of Confederate States Savings & Loan Association came on for hearing before the State Board. The Board was of the opinion that it had authority to go into the entire question for the purpose of determining whether it had jurisdiction to deny or approve the respondent's change of location; and an order was entered directing the respondent Confederate States Savings & Loan As-

sociation to petition the Board for approval of a change of location of its home office, such petition to be presented within ten days. It was expressly stipulated, however, that the Board would accept the respondent's petition with the understanding that the filing of such petition would not constitute a waiver of any right that the respondent might have to raise once again on full hearing the question of the jurisdiction of the Board to approve or disapprove its change of location.

The respondent Confederate States Savings & Loan Association, feeling aggrieved at the order of the Board, filed a petition for appeal to the chancery court from the order of the Board entered on August 20. On September 4, the State Board entered a "Supplemental Order" directing that the respondent cease and desist from its operation of its home office in the City of Oxford, until approval of the Board was obtained; and on September 11, the respondent filed its petition for appeal from that order.

The cause was heard by the chancellor on the above mentioned interlocutory appeals on January 22, 1963. At the conclusion of the hearing the chancellor held that the interlocutory appeals were premature, and that the case should be sent back to the Board for the hearing of testimony and further consideration by the Board of the question of the Board's jurisdiction of the subject matter. An order was therefore entered remanding the cause to the State Board for a full hearing on the question as to the jurisdiction of the Board to take action in the matter, and on the question whether, after the approval of its charter amendment, it was necessary for the respondent to close its Columbus office immediately and open a new office at Oxford immediately, or whether the respondent was entitled to a reasonable time for the removal of its office from Columbus to Oxford, and if so, whether such removal was effected

within such reasonable time after the approval of its charter amendment.

After the remand of the cause to the State Board, the respondent filed an answer to the appellant's petition, and the cause was set for further hearing by the Board on February 4, 1963.

In its answer the respondent alleged that it was doing business as a savings and loan association under an existing charter prior to the effective date of ''The Savings and Loan Act of 1962;'' that plans for the removal of the domicile of the respondent from Columbus to Oxford had been discussed by stockholders of the association at a meeting on April 24, 1962, and that, pursuant to proper notices thereof the stockholders at their regular annual meeting on May 14, 1962, had adopted a resolution for the amendment of the charter of the association so as to change the domicile of the association from Columbus, Mississippi, to Oxford, Mississippi, and so as to change the name of the association to ''Confederate States Savings & Loan Association of Oxford;'' that a certified copy of the resolution of the stockholders adopted on May 14, 1962, and the proposed amendment of the charter to conform with the provisions of the resolution were filed with the Secretary of State on June 29, 1962; that the proposed amendment of the charter, as thus approved by the stockholders, was approved by the Secretary of State, the Attorney General, and the Governor on June 29, 1962, and became effective immediately. The respondent further alleged that it had discontinued its business in Columbus and had leased premises and moved its principal place of business and its home office from Columbus to Oxford within a reasonable time after the approval of its charter amendment; and for the reasons stated the Board had no jurisdiction to rule on or consider the change of location of the respondent's home office or the validity of the above mentioned charter amendment.

The respondent therefore asked that the State Board dismiss the petition filed by North Mississippi Savings & Loan Association, with prejudice, and allow the respondent to resume doing business at its domicile and home office in Oxford.

On the date set for the hearing the Board heard testimony on the issues presented by the petition filed by North Mississippi Savings & Loan Association, and the answer of the respondent Confederate Savings & Loan Association to the petition. Two witnesses testified on behalf of the respondent Confederate States Savings & Loan Association. A copy of the resolution of the Confederate States' stockholders adopted on May 14, 1962, providing for the amendment of its charter, and a copy of the charter amendment approved by the Secretary of State, the Attorney General and the Governor on June 29, 1962, were made parts of the record. Copies of the original charter and all charter amendments approved prior to June 29, 1962, were also made a part of the record. No testimony was offered on behalf of the petitioner North Mississippi Savings & Loan Association.

It was the contention of the petitioner, North Mississippi Savings & Loan Association, throughout the hearing that the amendment to the respondent's charter changing the domicile of the corporation from Columbus to Oxford was irregular on its face, in that Section 5296.5, Miss. Code of 1942, Rec., which was in effect at the time the amendment was approved, expressly provided that, "All borrowers shall be members," and that the resolution adopted by the stockholders on May 14, 1962, upon which the charter amendment was based, did not show that a membership meeting was held or that the members participated in any manner whatsoever in the adoption of the resolution, but on the contrary the resolution recited that it was passed by the stockholders. It was also contended on behalf of the

petitioner that there was no proof in the record to show a need for another savings and loan association in the Oxford area.

At the conclusion of the hearing, the Board found that the respondent association had made plans over a period of several months to move its principal place of business from Columbus to Oxford; that a meeting of the stockholders, as stated in the respondent's answer, had been adopted on that date providing for the amendment of its charter, so as to change the corporate title of the association from Confederate States Savings & Loan Association No. 6 to Confederate States Savings & Loan Association of Oxford, and so as to change the domicile of the association from 1824 Main Street, Columbus, Mississippi, to 1603 East University Avenue, Oxford, Mississippi; and that the charter amendment had been approved by the proper authorities on June 29, 1962, and had become effective as of that date. The Board found that the amendment had been made under the provisions of the corporate statutes then in effect; that the respondent association after the approval of the amendment had proceeded to move its properties from Columbus to Oxford, and had, in fact, opened an office in Oxford on August 1, 1962.

The Board found that the notice to Confederate States' stockholders meeting on May 14, 1962, did not include notice to borrowers, who, by virtue of Section 5296.5, Miss. Code of 1942, Rec., were entitled to notice. The Board, however, stated that it did not recall that there was any evidence that the association then domiciled in Columbus actually had borrowers; and the Board was of the opinion that it did not have the authority to inquire into that kind of irregularity. The Board found that the amendment was regular upon its face, having been approved and filed in the manner provided by law.

The Board stated in its opinion that it could not find, as a matter of fact, that the respondent had moved its physical properties to Oxford prior to the effective date of the Savings and Loan Act of 1962, but it did find that plans therefor had been formulated over a period of several months prior to the effective date of the act, and the charter had been amended prior to the effective date of the act; that there was no evidence of bad faith on the part of the respondent; that Section 5310, Miss. Code of 1942, Rec., provided that a corporation must have a domicile, and Code Section 5319 required a corporation to maintain an office in the county of its domicile; and the Board was of the opinion that, if it prevented the respondent from moving its office to Oxford, it would find itself in conflict with several statutes, and "to prevent the removal of the principal place of business of the association from Columbus to Oxford would impair or at least modify the charter of an association doing business on the effective date of the act."

The Board was therefore of the opinion that it did not have jurisdiction in the matter, and an order was entered dismissing the petition of North Mississippi Savings & Loan Association for a rule or order prohibiting the respondent Confederate States Savings & Loan Association from changing the location of its home office from Columbus to Oxford.

The petitioner North Mississippi Savings & Loan Association, being aggrieved at the findings and order of the Board, filed its petition for an appeal to the chancery court, as provided in Section 6(e) of the Savings & Loan Act. The cause was heard by the chancellor on September 27, 1963; and at the conclusion of the hearing the chancellor rendered a written opinion in which he reviewed in detail and approved the findings of the State Board.

The chancellor was of the opinion that the Board was correct in its holding that the validity of the respondent

association's stockholders meeting held on May 14, 1962, and the validity of the respondent association's charter amendment approved on June 29, 1962, could not be collaterally attacked in a proceeding of this kind. The chancellor was of the opinion that there was no error in the Board's finding that, since the charter had been amended prior to the effective date of the Savings & Loan Act of 1962, for the Board to interfere with the removal of the domicile of the respondent association from Columbus to Oxford would be violative of Section 23 of the Act. The chancellor was also of the opinion that there was no error in the Board's finding that the respondent association had not waited an unreasonable time, after the approval of its charter amendment, to move its office and place of business from Columbus to Oxford. A decree was therefore entered affirming the order of the State Board. From that decree the petitioner, North Mississippi Savings & Loan Association, has prosecuted this appeal.

The appellant has assigned and argued two main points as grounds for reversal of the decree of the lower court: (1) That the Board and the chancellor erred in their refusal to hold that the relocation of the appellee's domicile or home office did not occur until after the effective date of the Savings and Loan Act of 1962, and that the Board therefore had jurisdiction to approve or disapprove the change of location of the appellee's home office at the time of the filing of the appellant's petition; and (2) that the Board and the chancellor erred in their refusal to hold that the appellee's purported charter amendment dated June 29, 1962, changing the name of the appellee association to "Confederate States Savings & Loan Association of Oxford" and changing the domicile of the corporation from Columbus, Mississippi, to Oxford, Mississippi, was defective on its face and had not been obtained in accordance with the requirements of Section 5296.5, Miss. Code of 1942, Rec.

We think there was no error in the findings and order of the Board or the decision of the chancellor on either of the points mentioned above.

It is argued on behalf of the appellant in support of the first above mentioned assignment of error, that on June 29, 1962, the date of the charter amendment, the appellee's only office was in the City of Columbus, and that situation was maintained for a period of approximately one month after the charter amendment was approved; that while the charter amendment may have effected a change of the appellee's "legal domicile" from Columbus to Oxford prior to the effective date of the Savings and Loan Act, the appellee had not changed the location of its home office in fact prior to the effective date of the act; that such change could be made after the effective date of the act only by permission of the State Board; and for that reason the Board should have retained jurisdiction for the hearing of the appellant's objections to such change on their merits.

But we think that contention has been fully answered in the Board's findings that, if it prevented the appellee from moving its home office to Oxford, it would find itself in conflict with several statutes, and "to prevent the removal of the principal place of business of the association from Columbus to Oxford would impair or at least modify the charter of an association doing business on the effective date of the act."

In 18 C.J.S., Corporations § 176b and c, it is said: "The general rule, sometimes expressly declared by statute, is that a corporation's domicile or residence, within the state of its creation, is in the county and city, town, or district in which its principal office or place of business is located, although it may also have offices or places of business somewhere else."

"* * *

"Where, under the statutes, a corporation has acquired a fixed domicile or residence at a particular place

within the state of its creation, as at the place designated in its charter, articles, or certificate of incorporation, as its principal office or place of business, it cannot change such domicile or residence at will, but only as authorized by statute, through authorized corporation action, and by complying substantially with the requirements of the statute.

Section 5310, Miss. Code of 1942, Rec., which was in effect at the time the appellee's charter was granted, and at the time of the approval of the charter amendment of June 29, 1962, provided that the domicile of the association should be stated in its charter. The appellee's domicile prior to June 29, 1962, was stated in its charter and could be changed only by a charter amendment. The appellee by complying substantially with the requirements of the statutes obtained on that date the charter amendment involved in this controversy. That amendment became effective prior to the effective date of the Savings and Loan Act, and in our opinion carried with it the right to move its principal office or place of business from Columbus to Oxford.

Section 5319, Code of 1942, Rec., as amended by Section 1, Ch. 199, Laws of 1954, and Section 1, Ch. 200, Laws of 1958, which was in effect in its amended form at the time of the approval of the appellee's charter amendment, expressly provided that: "Every domestic corporation * * * shall maintain an office in the county of its domicile in this state, either in charge of an officer or officers of the corporation, or designate and appoint a resident agent for the service of process * * *." By that statute the appellee was given a choice of maintaining an office in the county of its domicile or appointing a resident agent for service of process. The right given to the appellee by that statute to choose or elect to maintain an office in the county of its domicile was a statutory right which could not be impaired

or modified by the State Board in a proceeding of this kind.

The rights vested in the appellee by virtue of its charter amendment of June 29, 1962, changing its domicile from Columbus to Oxford, including the right to establish and maintain an office in the City of Oxford, were rights created prior to the effective date of the Savings and Loan Act of 1962, and by virtue of Section 23 of that act, those rights could not be precipitately annulled or modified by the State Board. The appellee was entitled to a reasonable period of time after the approval of its charter amendment within which to effect the change in the location of its home office from Columbus to Oxford, and the Board was eminently correct in its finding that it had no authority to interfere with the relocation of the appellee's office in the City of Oxford.

The decision of this Court in Estes v. Bank of Walnut Grove, 172 Miss. 499, 159 So. 104, which is cited in the appellant's brief, is not controlling in this case. In the Estes case the domicile of the "Tchula Store," as stated in the opinion rendered, was not absolutely fixed by the charter, but was fixed alternatively "at Tchula, Holmes County, Mississippi, or at such other place as the majority of stockholders in value may determine."

■■ ■ We also think there was no error in the chancellor's holding that an attack upon the validity or legality of the stockholder's meeting at which the charter amendment of June 29, 1962, was approved by the stockholders, was not proper in this proceeding.

The appellant was an entire stranger to the transactions involved in the amendment of the appellee's charter changing the appellee's domicile from Columbus to Oxford. No right of the appellant was invaded by the action of the appellee's stockholders in adopting the resolution of May 14, 1962, providing for the amendment of the appellee's charter. None of the stockholders

and account holders of record or borrowers from the appellee, or persons obligated to the appellee upon loans, have complained of a lack of notice of the stockholders' meeting or irregularities in the adoption of the resolution. If there were account holders of record or borrowers or other persons obligated to the appellee, who were entitled to notice of the stockholders' meeting, so far as this record shows they have taken no steps to set aside the action taken at the stockholders' meeting on May 14, 1962.

In discussing the subject, "Who may Question the Validity of Corporate Transactions," the textwriter in 19 C.J.S., 441, 442, 443, Corporations, § 981a, says:

"A most important general principle connected with the subject of the validity of corporate transactions, and one which arises above the mere principle of estoppel, is that whether a corporation has acted without authority or has abused its authority or has acted in contravention of law, ordinarily cannot be set up collaterally by individuals, but can be set up only by the state in a direct proceeding for that purpose * * *." See also Home Owners' Loan Corporation v. Moore, 184 Miss. 283, 185 So. 253; Moffett et al. v. International Paper Co., 243 Miss. 562, 139 So. 2d 655.

██ ■ Under certain circumstances, however, any party whose rights have been affected by the ultra vires transaction may raise the question of its validity, at least where a statute so permits. Accordingly, the question may be raised in a proper proceeding, by one interested in the corporation, such as a stockholder or by either party to the transaction, at least where it is still executory. 19 C.J.S., 442, 443, Corporations, § 981a.

In 13 Am. Jur., 231, Corporations, § 86, it is said: "* * * In case of corporations formed under general laws, the statutes usually prescribe the manner in which their articles of association may be amended by the stockholders or members. These requirements of the

statutes should, of course, be complied with in making amendments, although failure to do so does not always render the amendment invalid; this, generally speaking, depends upon the character of the amendment attempted. If the amendment is not fundamental, a failure to comply strictly with the requirements of the statutes will not render it ineffective.''

In a somewhat more extended discussion of the effect of irregularities in stockholders' meetings, the textwriter in 13 Am. Jur., 524, Corporations, § 484, says: ''The legality of action taken at a stockholders' meeting is not open to collateral attack by third persons or any ground of informality or irregularity in the meeting. Although there are statements to the effect that no lawful stockholders' meeting can be held that is not based upon a legitimate call, unless all stock is present and consents to such meeting, and that a stockholders' meeting held without notice, at which less than the whole amount of stock is represented, is illegal, these statements must in general be taken to mean only that the meeting is invalid as against those who were not present * * *. Action taken at a meeting which is irregular does not become binding upon stockholders who did not participate in the meeting or consent to the holding thereof. However, stockholders who were not present will be deemed to have ratified the action taken at an informal meeting or to have waived the objection of informality by failing to take active steps to set aside the action taken within a reasonable time.''

The rule thus stated has been recognized by this Court in the comparatively early case of State National Bank of St. Louis v. Merchants' Bank of Grenada, 83 Miss. 610, 35 So. 569, wherein the Court held that a general assignment for the benefit of creditors made by a corporation in an emergency requiring immediate action, in pursuance of a resolution of the stockholders passed at a meeting in which a majority of the stock

and stockholders were represented, could not be set aside at the suit of certain of the creditors claiming a prior lien in the distribution of assets, on the ground that the meeting of the stockholders authorizing the assignment was irregular, in that proper notice was not given, if in fact the majority of the stockholders were present at the meeting, and no stockholder was complaining of the action taken. The Court in its opinion in that case said: ''There is no pretense of any fraud on, or injustice to, the appellants or any creditor of the bank. Now, inasmuch as the exigency required prompt action, and inasmuch as the interests of stockholders alone are concerned, and inasmuch as they are not complaining, but approving, we are in accord with that line of authorities which deny the relief asked by the creditors.''

The same principle seemed to have been recognized by the Legislature in the enactment of Section 6 of Chapter 235, Laws of 1962, cited as ''The Mississippi Business Corporation Act'' of 1962, which became effective January 1, 1963.

We find no reversible error in the record, and the decree of the lower court is therefore affirmed.

Affirmed.

*Ethridge, Rodgers, Brady and Patterson, JJ.*, concur.