**DDR COMPUTER SERVICE BUREAU, INC., (Plaintiff and Counter–Defendant Below),**

**and**

**James F. Ries, Norman G. Dahlmann, and Michael Offerle, (Counter–Defendants Below), Appellants,**

**v.**

**Bernard M. DAVIS, (Defendant, Counter–Claimant Below), Appellee.**

**No. 2–180A4.**

Court of Appeals of Indiana, Fourth District.

Oct. 30, 1980.

Howard J. DeTrude, Jr., Peter G. Tramulonis and Lawson J. Clark, II (Kightlinger, Young, Gray & DeTrude), Clark & Alsip, Indianapolis, for appellants.

Charles E. Johnson and Wayne C. Bruness, Indianapolis, for appellee.

CHIPMAN, Judge.

This is a joint appeal. DDR Computer Service Bureau, Inc. [DDR], plaintiff below, appeals from an adverse judgment in its action for an accounting against corporate officer and director Bernard M. Davis. Counter–defendants James F. Ries, Norman G. Dahlmann and Michael Offerle appeal from an adverse judgment against them in favor of Bernard Davis on his counterclaim.

Affirmed in part, reversed in part.

The tortured history of this case begins in January of 1974 when Davis, a public accountant, approached Ries and Dahlmann

with a business/investment proposition. Davis, who served as Ries' and Dahlmann's accountant for many years, needed a computer for his accounting practice. He proposed the formation of a computer service bureau as a Subchapter S corporation. The corporation would purchase a Singer computer as the primary asset. At first, the parties could take advantage of certain tax benefits by utilizing investment tax credits, accelerated depreciation and an operating loss. When the business became more profitable and tax benefits were used up, the corporation would change from Subchapter S to a regular corporate status.

In February 1974, DDR Computer Service Bureau, Inc. was formed. Davis, Ries, and Dahlmann became the corporation's only directors, officers and shareholders. Each man borrowed $20,000 to finance the company's new computer, which the parties agreed would be located at the office of Bernard M. Davis Company, Davis' private accounting practice. The computer was to be operated by Mr. Offerle, Mr. Davis' employee.

Other terms of the parties' agreement concerning the use of the DDR computer were disputed at trial; unfortunately, they did not choose to reduce their agreement to writing. According to Ries and Dahlmann, all data processing revenue generated by Davis from the use of DDR computer was to be placed in DDR accounts. However, according to Davis, he was to pay DDR for the use of the computer in his separate accounting practice and revenue generated from pre–DDR data processing accounts was to remain the income of the Bernard M. Davis Company; only *new* data processing business and any *expanded* business from pre–DDR clients was to become DDR revenue.

During the months after DDR's formation Ries and Dahlmann apparently became concerned because of Davis' alleged failure to provide them with an adequate financial accounting of corporate affairs. Then, in early spring 1975 Mr. Offerle informed Ries

and Dahlmann that Davis had inexplicably withdrawn $13,000 from DDR and other DDR revenue was not being credited to the corporation's accounts. On May 22, 1975, Ries and Dahlmann held a special corporate meeting; Davis was not notified.[1] At the meeting Ries and Dahlmann decided to remove the DDR computer from Davis' office. A few days later, with the assistance of Mr. Offerle, Ries and Dahlmann removed and relocated the computer without Davis' knowledge or consent.

DDR filed its complaint against Davis on November 12, 1975, seeking an accounting of corporate funds. Davis counterclaimed against DDR, Ries, Dahlmann and Offerle alleging damage to his separate public accounting practice resulting from the "unauthorized" removal of the DDR computer from his office. Following a jury trial the lower court entered judgment against DDR on its complaint and for Bernard Davis on his counterclaim in the amount of $330,000. Ries, Dahlmann, Offerle and DDR now appeal raising a number of issues for our review. Because of our disposition of this case, we need address only the following questions:

1) Whether the verdict against Ries, Dahlmann and Offerle on Davis' counterclaim is contrary to law and/or not supported by sufficient evidence, and

2) Whether the jury, in its verdict, ignored the complaint of DDR against Bernard Davis thereby depriving DDR of a judicial determination of its claim.

## I. THE DAVIS COUNTERCLAIM

Counter--defendants Ries, Dahlmann and Offerle argue the verdict against them is contrary to law because Davis cannot recover for injury to his separate accounting practice merely upon a showing that certain procedural irregularities occurred during the corporate decision–making process, e.g. the failure to notify Davis of the special corporate meeting held May 22, 1975. They also contend there was insufficient evidence to support the damage award in this case.

---

1. Ries and Dahlmann testified they attempted to notify Davis of the meeting but Davis could not be reached. Davis testified that he was available and always returned any office calls.

■ In his brief Davis argues the basis of his counterclaim was not the violation of corporate statutory law, but tortious interference with a business expectancy, trespass and conversion. However, a review of the record demonstrates Davis is attempting to litigate these theories for the first time on appeal. No jury instructions were tendered or given on the theories of interference with a business, trespass or conversion. While we will affirm a judgment on any theory fairly presented to the trier of fact, this court will not justify a jury's verdict on unlitigated theories of recovery. *Daly v. Nau*, (1975) Ind.App., 339 N.E.2d 71.

Surprisingly, Davis tendered only seven instructions pertaining to his counterclaim. Davis' instructions 1 through 5 told the jury there were corporation statutes in force and violation of any of the statutes would constitute "tortious and wrongful conduct" on the part of the "counter–defendant." For example, Davis' instruction number 2 cited Ind. Code 23–1–2–11:

"DEFENDANT'S INSTRUCTION NO. 2

There was in force a statute of the State of Indiana which provided, insofar as applies in this case:

'The business of every corporation shall be managed by a board of directors . . .'

'Meetings of the board of directors may be held at such time and place (either within or without this state) and upon such notice as may be provided in the articles of incorporation or the by–laws: Provided, however, That in lieu of such notice, a director may sign a written waiver of notice either before the time of the meeting, at the time of the meeting or after the time of the meeting.'

'Unless otherwise provided by the articles of incorporation or by–laws, any action required or permitted to be taken at any meeting of the board of directors or of any committee thereof may be taken without a meeting, if prior to such action a written consent to such action is signed by all members

of the board or of such committee as the case may be, and such written consent is filed with the minutes of proceedings of the board of committee.'

If you find from a preponderance of the evidence that counter–defendant violated the statute on the occasion in question, and that such violation was without excuse or justification such conduct would constitute tortious and wrongful conduct on the part of the counter–defendant." ·

Davis' instructions 1, 3, 4 and 5 were in the same form but cited other corporation statutes relating to procedures for special corporate transactions, removal of directors and holding of shareholder meetings.

■ The trial court clearly erred in giving Davis' instructions 1 through 5. Davis' position in this law suit was not that of a shareholder or director attempting to set aside or declare void action taken by corporate management. *See, e.g. First Merchants National Bank & Trust Co. of Lafayette v. Murdock Realty Co.*, (1942) 111 Ind.App. 226, 39 N.E.2d 507; *Hill Dredging Corp. v. Risley*, (1955) 18 N.J. 501, 114 A.2d 697; *Lycette v. Green River Gorge, Inc.*, (1944) 21 Wash.2d 859, 153 P.2d 873. Nor was he attempting to be reinstated as a corporate director or to recover corporate property. Instead, Davis sought damages for injury to his separate public accounting practice caused by the alleged wrongful removal and relocation of the DDR computer. While Davis was at the time a shareholder, director and president of DDR, his position as counterclaimant in this action was similar to that of any other party vis–a–vis the corporation. It is well established that third parties cannot take advantage of internal corporate procedural irregularities. *Abbey Properties Co., Inc. v. Presidential Insurance Company*, (1960) Fla.App., 119 So.2d 74; *Rossing v. State Bank of Bode*, (1917) 181 Iowa 1013, 165 N.W. 254; *North Mississippi Savings & Loan Assoc. v. Confederate States Savings & Loan Assoc.*, (1964) Miss., 166 So.2d 119. *Fletcher*, Cyclopedia of the Law of Private Corporations § 2024 (rev.perm.ed.1976). In the present

case there is lacking a sufficient legal nexus between the acts complained of, i.e. violation of the various corporate statutes cited in Davis' instructions, and the damage alleged to have resulted to Davis' separate accounting practice.

However, it appears Ries, Dahlmann and Offerle did not timely object to the jury instructions tendered by Davis. The only objections made were written challenges filed with the trial court some fifty–five days after the jury returned its verdict. Accordingly, any objections to the instructions have been waived. Ind.Rules of Procedure, Trial Rule 51(C).[2]

Strangely enough, Davis argues on appeal that his instructions 1 through 5 did not apply to Ries, Dahlmann and Offerle, only to the corporate counter–defendant DDR. But to adopt this position would lead us to the rather anomalous conclusion that there were *no* jury instructions requested or given on the individual liability of Ries, Dahlmann and Offerle. Furthermore, we are less interested in Davis' interpretation of the instructions given than in the way the jury likely viewed the instructions and applied them to the facts of this case. Instructions 1 through 5 were not expressly limited in their application to DDR, the corporate entity. Instead, the instructions referred only to the wrongful and tortious conduct of the "counter–defendant", a term used by the parties to denominate DDR *and* Ries, Dahlmann and Offerle. The jury quite probably viewed Davis' instructions as applicable to all "counter–defendants", especially in the absence of any other liability instructions pertaining to the Davis counterclaim. Therefore, the jury was told a violation of the cited corporate statutes constituted tortious conduct on the part of Ries, Dahlmann and Offerle. In the absence of a timely objection, these erroneous instructions became the law of the case.

■ Appellants argue that regardless of the question of liability, the evidence was insufficient to support the $330,000 verdict entered against them. We are inclined to agree. Davis' instruction number 7 stated:

"If you find for Mr. Davis, Counter–Claimant, on the question of liability, you then must determine the amount of money which will fairly compensate Mr. Davis for those elements of damage *which were proved by the evidence to have resulted from the wrongful conduct of the counter–defendants*. You may consider;

1. The nature and the extent of the damage or loss.

2. The value of lost time, earnings or decrease or impairment of earning capacity.

---

**2.** It is the appellants' position that their objections were timely filed. They now claim the trial court "indicated that objections were to be made after the jury had retired to deliberate. Whether the objections were to be dictated verbally two minutes, two hours or two months after the jury retired is irrelevant."

To the contrary, Trial Rule 51(C) states in no uncertain terms, "No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict . . . ."

While it would be improper for a trial judge to simply refuse a party the opportunity to enter specific objections to instructions prior to the jury's deliberation, that was clearly not the situation in the present case. In an affidavit submitted by trial judge Walter Bell, he states:

"1. That at the conclusion of the trial in the above–captioned case, attorneys for plaintiffs and defendant met in chambers with affiant and argued instructions.

2. That at that time the Court indicated to both plaintiffs' and defendant's counsel which instructions it would give and asked if either side had any objections, both plaintiffs' and defendant's counsel answered in the negative.

3. That thereafter the Court reassumed the bench and once again informed both plaintiff and defendant as to which instructions it would give and stated that if anyone desired to make objections they could do it now or they could do it while the jury was deliberating.

4. Both plaintiffs' and defendant's counsel again affirmed that they had no objections to instructions.

5. After the final arguments and reading of the instructions the Court again stated that he would call the Reporter in should either party desire to dictate objections to her while the jury was deliberating. Both plaintiff's and defendant's counsel stated they had no objections."

3. Where personal property is partially destroyed, the measure of damages is the difference between the fair market value of the property immediately before the damage and the fair market value of the property immediately after the damage.

4. The age of the counter–claimant at [sic] his normal life expectancy.

5. Loss of profits, if any.

You are to determine whether these elements of damage have been proved by a consideration of the evidence relating to damages. Your verdict must be based on that evidence and not on guess or speculation."

This instruction limited the jury to awarding damages shown by the evidence to have "resulted from the wrongful conduct" of Ries, Dahlmann and Offerle. Yet evidence establishing a causal relationship between the wrongful conduct complained of and the damages suffered was lacking. There was no evidence to prove Ries and Dahlmann, as majority directors and shareholders, would have taken any different action had Davis been notified of their meeting. Indeed, their fears concerning Davis' operation of the business were well–founded. Davis admitted to having misused the corporate accounts when hiding assets from his wife during a pending divorce proceeding. Data processing revenue which *Ries and Dahlmann thought* should have been DDR's was *not* being credited to DDR accounts. The jury was left merely to speculate whether different internal corporate procedures would have had any impact upon DDR's action in relocating the computer. There was simply insufficient evidence to establish that the damages to Davis' separate business resulted from the conduct Davis claims to have been tortious.

## II. DDR'S COMPLAINT

Appellant DDR argues its claim against Davis for an accounting of corporate funds was ignored by the jury in its verdict and for this reason it should be granted a new trial.

One of the verdict forms provided to the jury stated:

"We, the Jury, find for the Defendant, Bernard M. Davis, and against the Plaintiff DDR Computer Service Bureau, Inc.

---

Foreman"

However, when the jury returned its verdict on DDR's complaint it crossed–out the words "DDR Computer Service Bureau, Inc.," added an "s" to the word "Plaintiff," and added the names of Ries, Dahlmann and Offerle so that the verdict read:

"We, the Jury, find for the Defendant, Bernard M. Davis and against the Plaintiffs, James F. Ries, Norman G. Dahlmann, Michael L. Offerle.

/s/ Darlene M. Glenn
Foreman"

DDR argues the altering of the verdict form demonstrates the jury intentionally ignored DDR's claim or the jury was helplessly confused. As the true intent of the jury cannot be surely ascertained, argues DDR, it was improper for the trial court to enter judgment against DDR on its complaint. To the contrary, Davis categorizes the verdict irregularity as a mere clerical error which was properly corrected by the trial court when it entered formal judgment.

■ We are inclined to agree with DDR that the verdict form demonstrates at least some confusion on the part of the jury. However, we do not agree the corporation should be granted a new trial in this instance. It was incumbent upon DDR to object to the verdict form as soon as it was returned. Had an objection been interposed, the trial court could have appraised the jury of the irregularity and a proper verdict could have been reached. When the jury was discharged, the opportunity to avoid the expense of a new trial was lost. DDR did not have the option to simply ignore the irregularity and hope for a reversal on appeal.

We note in a review of the record that DDR tendered no jury instructions on the liability of Davis for an accounting of

funds. Indeed, it is not surprising that the jury in this case suffered from a great deal of confusion. While it remains primarily the duty of the trial court to properly instruct the jury as to the issues for trial, Ind.Rules of Procedure, Trial Rule 51(A), counsel for each party did an extremely poor job of presenting to the trial court, and coincidentally to the trier of fact, the legal principles relevant to their respective actions.

Furthermore, we are compelled to comment on the manner in which this appeal was presented. For instance, appellant's statement of the facts ignores the well established rule that an appellate court is limited to a review of the facts most favorable to the judgment. Instead, appellants cite primarily the testimony of their own witnesses and coincidentally force this court to undertake an independent review of the entire transcript. The appellee forwards theories of recovery in his brief that were clearly not litigated at trial. Both briefs are filled with accusations of "misleading" statements, "confusing" and "distorted" issues, "vindictiveness", "frivolity", "bad faith", and "misrepresentations." Appellants' reply brief concludes that Mr. Davis is simply "incapable of understanding the issues appellants have raised on appeal." These comments and personal jibes do little to aid this court in arriving at a fair and legally sound decision. Instead, the remarks serve only to clutter the briefs and are distinctly unprofessional. In the future they should be avoided.

Accordingly, the judgment against Ries, Dahlmann and Offerle is reversed. In all other respects the decision of the trial court is affirmed.

MILLER, J., and YOUNG, P. J., concur.