LaSALLE MOTOR CAR SALES, INC., Philip Rashid and Patricia Waris Rashid, Appellants,

v.

CALUMET NATIONAL BANK, Appellee.

No. 3–1081A253.

Court of Appeals of Indiana, Third District.

Sept. 28, 1982.

Rehearing Denied Nov. 17, 1982.

William J. Moran, George E. Brown, Highland, for appellants.

Orest S. Szewciw, Diana Cross Gonzalez, Hammond, for appellee.

STATON, Judge.

The Calumet National Bank had financed Philip Rashid's used car lot, LaSalle Motor Car Sales, Inc. on the personal guarantee of Rashid and his wife. Rashid had also executed documents which stated that his inventory of used cars was collateral for the loan and that proceeds from the sale of the used cars would be applied to reduce his indebtedness with the Bank. The Bank, deeming itself insecure because the proceeds from some of the cars sold had not

1. The Rashids executed an assignment of interest and a power of attorney to the Bank regard-

been tendered to the Bank to reduce Rashid's indebtedness, requested and received additional security from the Rashids.[1] Shortly thereafter, the Bank notified Rashid in writing that he was in default and that the used cars, as collateral, would be repossessed. The cars were repossessed and sold.

The Bank brought suit against the Rashids to recover the balance of the loan. The Rashids denied any indebtedness and counterclaimed that the assignment and power of attorney should be set aside and that damages be awarded. The jury found for the Bank on its complaint and the Rashids on their counterclaim.

On appeal, Rashid raises the following issues:

(1) Did the trial court err when it refused to give his tendered instructions no. 5 and no. 6?

(2) Did the trial court err when it gave a modified version of the Bank's tendered instruction no. 6?

(3) Was the verdict on his counterclaim contrary to law, irregular, incomplete and outside the scope of the evidence?

We affirm.

## I.

### Tendered Instructions

The Rashids had argued that the Bank did not act in a commercially reasonable manner in the repossession and sale of the used car inventory. They tendered the following instruction on their theory of the case:

"DEFENDANTS INSTRUCTION NO. 5

"Every aspect of the disposition of collateral by a creditor, in this case the Calumet National Bank, must be commercially reasonable. This requirement of commercial reasonableness applies to the method, manner, time, place and terms of the disposition of the collateral.

ing their home.

"In an action for a deficiency judgment, the creditor must prove that the sale or disposition of the collateral was performed in a commercially reasonable manner."

█ When we consider whether any error results from the refusal of a tendered instruction, we must determine whether (1) the tendered instruction correctly states the law, (2) there is evidence in the record to support the giving of the instruction, (3) the substance of the instruction is covered in another instruction accepted by the court. *Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159, 164–165.

█ The following instruction was given to the jury by the trial court:

"In reviewing a sale to determine if it was conducted in a commercially reasonable manner, all of the circumstances must be weighed. All of these circumstances must be considered as interrelated parts of the whole transaction."

This instruction generally states that all the circumstances must be considered. Rashid tendered an instruction that emphasized some of the circumstances of the sale. Although Rashid's tendered instruction is a more accurate and detailed statement of the law, we cannot say that the trial court committed reversible error when it refused his instruction. The substance of Rashid's tendered instruction was contained in the instruction given by the trial court.[2]

The trial court also refused Rashid's tendered instruction number 6. The refused instruction states:

"In determining whether or not a sale is commercially reasonable, you should consider whether or not a fair sale price was received for each item of collateral. If you find that a fair price was not received for an item of collateral, you may then consider the number of bids received for the collateral, any price re-

ceived at a subsequent sale of the collateral and whether the collateral was sold at wholesale or retail. Sales in which only a few bids were received must be given the closest scrutiny, and you should declare them invalid if there is evidence of collusion, self-dealing or bad faith on the part of the creditor."

Although Rashid's tendered instruction is an accurate and detailed statement of the law, the substance of the refused instruction is contained in the general instruction of the trial court. The trial court did not commit reversible error when it refused the tendered instruction.

## II.

### Modified Instruction

█ The trial court gave the following modified instruction:

"Commercially reasonable means that the sale was conducted in the same manner and using the same practices as those used by dealers in the type of property which was sold.

"If the bank sold the cars in conformity with reasonable commercial practices among dealers in used cars, then the sale was a commercially reasonable one. Further, a sale on a wholesale market or auction will generally be presumed to be commercially reasonable."

At trial, Rashid objected to the modified instruction because the last sentence was not a correct statement of the law. He argues that the trial court erred when it gave the instruction.

We disagree. In *Hall v. Owen County State Bank* (1977), Ind.App., 370 N.E.2d 918, 929–930, this Court stated:

"Some examples of a commercially reasonable sale are given in IC 1971, 26–1–9–507(2). If the collateral is sold in the usual manner in a recognized market for used goods, or if the goods are sold for

---

**2.** Rashid also argues that the trial court erred when it refused his tendered instruction number 5 because the instruction would have advised the jury that the bank bore the burden of proving the commercial reasonableness of the disposition of the collateral. We disagree be-

cause the trial court had generally instructed the jury that the Bank bore the burden of proof on the complaint and that Rashid bore the burden of proof on the counterclaim. The trial court did not commit reversible error when it refused Rashid's tendered instruction.

the price that is current in that market, then the sale is presumed to be proper. Also, if the sale is conducted in conformity with 'the reasonable commercial practices among dealers in the type of property sold', or if the disposition is approved in a judicial proceeding, it will be presumed to be commercially reasonable...

\* \* \* \* \* \*

"While we feel that in most cases a sale or disposal of collateral to a dealer or on a wholesale market or auction will be commercially reasonable, the answer to this question will generally depend upon the circumstances of each particular case and will therefore be a question of fact for the factfinder in most cases."

When read in conjunction with the rest of the instructions given by the court, this instruction was a proper jury instruction.

## III.

### Verdict

■ Two days before the Bank repossessed the inventory of Rashid, the Bank requested and received additional security from the Rashids in the form of an assignment of interest and a power of attorney regarding their home. In the counterclaim of the Rashids, they alleged that the further security was given only because of the verbal agreement that the Bank would continue to extend and advance credit to their business. The counterclaim stated that the Bank had breached this contractual relationship; therefore, the assignment and power of attorney which purports to convey the interest in the home to the Bank should be set aside and rescinded. They also asked for monetary damages.

The jury returned the following verdict:
"We, the Jury, find in favor of defendants [Rashids] and against plaintiff [the Bank] on defendants' counter claim: Return to Phillip and Patricia Rashid the ownership of deed or deeds to all real estate acquired by the Calumet National Bank through the Assignment and Power of Attorney, Defendants' Exhibit # 1."

The trial court entered the following judgment:

"It is further CONSIDERED, ADJUDGED AND DECREED by the Court that the plaintiff return to Phillip Rashid and Patricia Waris Rashid the ownership of deed or deeds to all real estate acquired by the Calumet National Bank through the Assignment and Power of Attorney, defendants' Exhibit '1'."

On appeal, the Rashids argue that the jury's verdict is outside the issues raised by the pleadings and evidence in the case. They also argue that the purported award of damages is in fact no award in that the jury failed to discharge its statutory duty. Therefore, they reason, the judgment on the verdict cannot stand.

Unfortunately, the Rashids did not object to the form of the verdict until they filed their motion to correct errors. Our case law requires an objection to the form of the verdict as soon as it is returned. *DDR Computer Service Bureau, Inc., v. Davis* (1980), Ind.App., 411 N.E.2d 722, 727. The trial court could have appraised the jury of the irregularity and a proper verdict could have been reached if the Rashids had raised their objection. When the jury was discharged, the opportunity to avoid the expense of a new trial was lost. Litigants do not have the option to simply ignore alleged irregularities in the form of the verdict and hope for a reversal on appeal. *Id.* This issue was waived.

## IV.

### Sufficiency of Evidence

■ The jury awarded the Bank $64,-600.00. On appeal, Rashid argues that the verdict is excessive and unsupported by the evidence. He argues that the Bank did not present sufficient evidence (1) of the fair value of the collateral and (2) that the collateral was not disposed of in a commercially reasonable manner.

In reviewing the evidence on appeal, we look to the evidence most favorable to the Bank to determine if there is substantial evidence of probative value or reasonable inferences therefrom to sustain the judg-

ment of the trial court. We will reverse the judgment only if the evidence and reasonable inferences are undisputed and could only lead to a verdict contrary to that reached by the jury. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797, 798.

Bob Rossa of the commercial loan department of the Bank testified that the total amount due on the notes of the Rashids was $87,493.49. He stated that the amount of principal was $71,651.94 and that the amount of interest was $15,841.55. He stated that he had personally calculated these figures because the computer of the Bank no longer contained this information.[3] A floating interest rate 1½% above the prime interest rate had been agreed upon in the notes and was used by Rossa in his calculations. The notes were in evidence. This evidence is sufficient to support the verdict of the jury.

Rashid also argues that there is not sufficient evidence that the Bank disposed of the collateral in a commercially reasonable manner. We disagree.

John Dimik, a used car dealer, disposed of the automobiles. He rated each car as either rough, average, or clean. He stated a rough car has a worn interior, high mileage, bad body paint, and possibly a frayed, worn vinyl top. He stated there were fourteen rough cars (one being extra rough), one car between rough and average, five average cars, and no clean cars. He also rated the cars as subcompact, compact, intermediate, and full size cars. There was only one compact and a few intermediates. The majority were full size. He further testified that the price of heavy, full sized cars was falling due to consumer concern about gasoline mileage.

Twenty two or twenty three of the automobiles were sold at a private auction for car dealers. He estimated that 150 to 250 dealers attended the auction. Dimik testified that he had determined a minimum price for each auto that had to be obtained before the auction could sell the automobile. He refused two bids that were below these prices. He eventually purchased these automobiles for the higher minimum price since they did not sell at the auction. All other autos sold for the highest price bid at the auction.[4]

Rashid argues that the disposition of the collateral was not carried out in good faith.[5] In support of this argument he notes (1) Dimik is a business customer of the Bank (2) Dimik acquired two of his repossessed vehicles and resold them for a profit. The jury weighed the evidence. We will not reweigh the evidence on appeal. *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176, 177. The jury could reasonably reach a conclusion different from the conclusion of Rashid.

Rashid also argues that the repossession of the automobiles was not done in good faith. Again, the jury had all the evidence before it and it weighed the evidence. Apparently the jury chose to believe the explanation of the Bank concerning its actions.[6] We will not reweigh the evidence.

Judgment affirmed.

GARRARD, and NEAL (by designation), JJ., concur.

3. The notes had been charged off by the Bank.

4. These bids were higher than the minimum price determined by Dimik.

5. Rashid cites IC 26–1–1–201(19) which states:
   " 'Good faith' means honest in fact in the conduct or transaction concerned."

6. After an officer of the Bank discovered that many autos had been sold out of the trust and that duplicate certificates of origin had been issued, he decided to repossess the balance of the unsold autos. Two lawsuits were pending concerning autos that had been sold by Rashid and financed by the Bank. Some of the purchasers of the autos did not have the title to their autos transferred after the sale.