**Glen Michael YOUNG, Appellant–Plaintiff,**

v.

**INDIANA DEPARTMENT OF NATURAL RESOURCES, et al, Appellee–Defendants.**

No. 20A03–0205–CV–161.

Court of Appeals of Indiana.

June 9, 2003.

John C. Theisen, Holly A. Brady, Theisen & Associates, Mark D. Scudder, Barnes & Thornburg, Fort Wayne, IN, Attorneys for Appellant.

Stever Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Following his termination from the Indiana Department of Natural Resources (the "DNR"), Glen Michael Young filed a suit against the DNR and several of its officers (the "officers") in their individual and official capacities for violations of his federal and state constitutional rights.[1] During the jury trial, at the end of Young's case, the DNR and the officers moved for a directed verdict, which the trial court took under advisement. The jury found that the DNR and the officers had violated Young's state and federal constitutional rights, but assigned a $115,000.00 award only to the DNR and only relating to Young's state constitutional claim. Following the jury verdict, the trial court denied the DNR's and the officers' Motion for Directed Verdict. The parties each filed post-trial motions, which were denied by the trial court. Both parties now appeal. We affirm in part and reverse in part.

*Issues*

Young raises four issues for our review, which we consolidate and restate as whether the trial court erred in declining to correct legally inconsistent jury verdicts.

The DNR and the officers raise two issues on cross-appeal for our review, of which we find the following dispositive: whether the trial court erred in denying the DNR and the officers' Motion for Directed Verdict.

Additionally, Young raises one issue for our review which we restate as whether the trial court erred in declining to award Young his attorney's fees and costs as a prevailing party of a Section 1983 claim.

*Facts and Procedural History*

Young became a conservation officer for the DNR in October 1979. From 1979 through 1990, Young and the other officers of the DNR relied upon the Elkhart County Communications Center (the "Communications Center") for dispatching and emergency communications. In October 1990, the Communications Center made the decision to cease dispatching for the DNR. After the Communications Center made that decision, Young began communicating with the DNR's chain of command about his concerns regarding the lack of communications posed to his safety, the safety of his fellow officers, and the safety of the public. Young continued to write letters to the chain of command for almost seven years in an attempt to address the problems with communications.

After receiving no response from the chain of command, Young began contacting his state representatives. Beginning April 13, 1996, Young contacted Marvin Reigsecker, Sr., state senator for Elkhart

---

1. Although Young originally filed suit against other DNR officers and employees, he voluntarily dismissed the complaint against all employees and officers except DNR Conservation Officer Stephen Seemeyer, DNR Lieutenant David Anderson, and DNR Director Charles Shannon.

county, and the following state representatives: Phil Warner, Dick Mangus, and Dean Mock. Young's communications with all of these representatives regarded the safety of the DNR officers without dispatch from the Communications Center.

Approximately one month after Young began contacting the representatives, Young became the subject of an internal investigation. As a result of the investigation, the officers terminated Young's employment.[2]

Following his termination, Young filed a complaint against the DNR and several DNR employees and officers in their individual and official capacities. The basis of Young's complaint was that he was terminated in retaliation for exercising his constitutional right to petition the government for redress of grievances and freedom of speech. It was Young's position that the officers became upset and terminated his employment when he went outside the chain of command by speaking with his state representatives. During the jury trial, at the close of Young's case, the DNR and the officers filed a Motion for Directed Verdict. They argued that Young failed to exhaust administrative remedies and that Young's complaints to his state representatives concerned his own safety and did not raise issues of public concern. The trial court took the motion under advisement and ultimately denied the motion following the jury verdict.

Following a six-day jury trial, the jury returned a verdict finding against the officers for violating Young's right to petition the government for redress of grievances under the United States Constitution and actionable under 42 U.S.C.1983, but awarded no damages for this claim. Additionally, the jury returned a verdict finding against the DNR and the officers for vio-

lating Young's federal constitutional right to petition the government for redress of grievances, but again awarded no damages for this claim. Finally, the jury returned a verdict against the DNR and the officers for violating Young's state constitutional right to petition the government for redress of grievances and awarded damages of $115,000.00 against only the DNR.

Following the entry of judgment, Young filed a Motion to Correct Errors and a Motion for Clarification of Judgment and Injunctive Relief. In these motions, Young sought to attribute damages against the DNR and the officers for each claim on which they were found liable. Young also filed a Motion for Reinstatement and Injunctive Relief, seeking reinstatement to his previous position and an injunction against the officers to prevent future violations of his constitutional rights. Finally, Young filed a Petition for Award of Costs and Petition for Award of Attorneys' Fees. The DNR also filed a Motion to Correct Errors, arguing that there is no cause of action for damages against the DNR under the Indiana Constitution.

The trial court denied all post-trial motions. The trial court denied the DNR's and the officers' Motion to Correct Errors, finding that Indiana law allows a party to bring a cause of action for damages directly under the Indiana Constitution. The trial court also found that, even if such a claim did not exist, the defendants waived the argument by failing to object to the jury instructions.

The court also denied Young's motions, declining to attribute damages to the DNR and the officers on each claim for which they were found liable, declining to order the DNR to reinstate Young or issue an

**2.** Seemeyer and Anderson recommended Young's employment be terminated. Shan-

non accepted this recommendation and terminated Young's employment with the DNR.

injunction, and declining to award attorneys' fees or costs. This appeal ensued.

*Discussion and Decision*

## I. Motions to Correct Errors

 A trial court has considerable discretion to grant or deny motions to correct error. *Dughaish ex rel. Dughaish v. Cobb,* 729 N.E.2d 159, 167 (Ind.Ct.App. 2000), *trans. denied.* We will reverse only if the trial court has abused its discretion. *Id.* However, as here, when the motion involves a question of law, we review de novo and owe no deference to a trial court's legal conclusions. *State v. Rans,* 739 N.E.2d 164, 165 (Ind.Ct.App.2000), *trans. denied.*

### A. Legally Impossible Verdicts

Although the jury found the DNR and the officers liable for violating Young's state and federal right to petition the government for redress of grievances, the jury awarded damages only against the DNR and only on the state claim. Young contends that this award is contrary to law and reason and that the trial court erred in declining to attribute the DNR's liability to the federal claim as well. Young asserts that the state and federal claims have the same elements and therefore, it is legally impossible to satisfy the elements for one and not the other.

Young notes that Jury Instruction Number 16 provided the jury with the elements of Young's claims under both the federal and the state right to petition the government for redress of grievances. Instruction Number 16 read:

> [Young] claims that the defendants discharged him from his employment with the Indiana Department of Natural Resources because he exercised his right to petition the government for redress of grievances guaranteed by the Constitutions of the United States and Indiana.

In order to prevail on this claim, [Young] must prove all the following facts by a preponderance of the evidence:

1. That [Young] petitioned the government for redress of a grievance;
2. That the petition was a substantial or motivating factor in the decision to terminate [Young];
3. That [Young] was damaged; and
4. That the termination was the proximate cause of [Young's] injuries.

Appellant's Appendix at 147. Young notes that the instruction makes no distinction between the state and federal right to petition the government for redress of grievances. Because the instruction makes no distinction between the rights, Young contends that it was contrary to law for the jury to award damages for his state claim but not for his federal claim.

Additionally, Young contends that the jury verdict was contrary to law because the award of damages was limited to only one defendant. Although the jury found that both the DNR and the officers violated Young's constitutional rights, the jury attributed the award only to the DNR. Young contends that, as a legal entity, the DNR can act only through its employees. Therefore, Young contends that the trial court erred in declining to adjust the jury verdict to hold the DNR and the officers jointly and severally liable for the damage that arose from his termination.

 The DNR contends, however, that Young waived his right to object to the jury verdicts. It cites *DDR Computer Serv. Bureau v. Davis,* 411 N.E.2d 722 (Ind.Ct.App.1980), for the proposition that Young needed to object to the jury verdict before the jury was dismissed in order to preserve the issue on appeal. In *DDR,* this court stated:

It was incumbent upon DDR to object to the verdict form as soon as it was returned. Had an objection been interposed, the trial court could have apprised the jury of the irregularity and a proper verdict could have been reached. When the jury was discharged, the opportunity to avoid the expense of a new trial was lost. DDR did not have the option to simply ignore the irregularity and hope for reversal on appeal.

*Id.* at 727; *see also LaSalle Motor Car Sales v. Calumet Nat. Bank,* 440 N.E.2d 9, 12 (Ind.Ct.App.1982) ("Our case law requires an objection to the form of the verdict as soon as it is returned."). The DNR argues that the trial court afforded Young at least three opportunities to object. First, immediately following the verdict, the court alerted both sides that there might be a problem and asked what they wanted to do. After deliberation with counsel, the court asked Young what his position was in regard to the verdicts which seemed to be inconsistent. Young replied through counsel, "We do not challenge those verdicts, Your Honor. We accept the verdicts of the jury." Transcript at 1042. After reading the verdicts in the presence of the jury, the court asked whether there were any motions with respect to the verdict. Both sides replied that there were not. *Id.* at 1047.

Furthermore, the DNR notes that the court informed both parties that the court was inclined to send the jury back to deliberate further. *Id.* at 1042. The DNR argues that the jury could have then corrected the verdict and some of the issues on appeal would have been avoided. However, even at this point, Young failed to object to the jury verdicts and did not request that the jury retire for additional deliberation.

This case is factually similar to *Buckland v. Reed,* 629 N.E.2d 1241 (Ind.Ct. App.1994). In *Buckland,* the jury assessed damages in the amount of $20,000.00, but reduced the amount to $12,000.00 for comparative fault. Buckland contended that it was legally impossible for the jury to determine that his fault was not the proximate cause of his injuries, yet allocate forty percent of the fault to him. Therefore, he argued that the verdict was contrary to law. This court noted that any irregularity in the jury verdict form should have been brought to the trial court's attention immediately after the verdict was returned. Citing *DDR,* this court held that Buckland did not have the option to simply ignore the irregularity and hope for reversal on appeal. *Id.* at 1244 (citing *DDR,* 411 N.E.2d at 722). We noted that the matter of the inconsistency was brought to the attention of the trial court for the first time in a Motion to Correct Error. Had timely objection been made, assuming the verdict was improper, the trial court could have apprised the jury of the irregularity and a proper verdict could have been reached. *Id.; see also* Ind.Code § 34–4–33–9.

This is different from the situation where the party argues merely that the verdict is inadequate. In *Hunter v. Byrd,* 602 N.E.2d 1052 (Ind.Ct.App.1992), *trans. denied,* the jury found the defendant motorist fifty-one percent at fault and plaintiff bicyclist forty-nine percent at fault, yet awarded zero damages. Citing *DDR,* we noted that this court has ruled that failure to object to an inconsistent or irregular verdict before the jury is dismissed may result in waiver. *Id.* at 1055. However, in *Hunter,* we stated that the verdict challenged was not inconsistent, but inadequate. Therefore, we held that the waiver argument was without merit as an inadequate award is properly challenged in a Trial Rule 59(A)(2) Motion to Correct Error. *Id.*

Here, however, Young filed his Motion to Correct Errors in an attempt to challenge an inconsistent verdict, not an inadequate verdict. Young contends that his Motion to Correct Errors should be considered sufficient because it was filed the day after the judgment was entered. The jury informed the court at 10:25 p.m. on January 22, 2002, that it had reached a verdict. The trial court judge discussed the problematic verdict with both parties and then returned to open court for a reading of the verdicts. The court then entered the verdicts. Young filed his Motion to Correct Errors on January 23, 2002. Despite the fact that Young filed his motion the day after the verdict, we find this argument unpersuasive.

Had Young not been given an opportunity to object, the outcome of the waiver issue may have been different. In *Nelson v. Sigman*, 558 N.E.2d 1115 (Ind.Ct.App. 1990), this court held that waiver does not occur where the trial court gave the party no opportunity to object before entering judgment on the verdict:

The proposition that waiver of an issue does not occur where the affected party is given no prior notice of a proposed action and an opportunity to be heard thereon is so fundamental it needs no citation of authority. Because the trial court gave Nelson no such opportunity prior to discharging the jury from further service, waiver of the issue did not occur.

*Id.* at 1117. However, as noted above, Young had more than one opportunity to object or to request that the jury deliberate further and he failed to object in a timely fashion.

Although he contends that filing a Motion to Correct Errors the next day was the same as objecting at the time the verdicts were read, we cannot agree. The language of *DDR* and *Buckland* make it

clear that the purpose to objecting to the verdicts when they are read is to allow the trial court an opportunity to ask the jury to continue deliberations. It is clear that the trial court considered the verdicts to be inconsistent in some way and offered the parties several chances to object. Instead, Young accepted the verdicts of the jury and then filed a Motion to Correct Errors after the jury had been dismissed. Therefore, Young waived his right to appeal the verdicts of the jury.

II. Motion for Directed Verdict

A. Standard of Review

■■■■ When reviewing a motion for directed verdict, we use the same standard as the trial court. *Kristoff v. Glasson*, 778 N.E.2d 465, 474 (Ind.Ct.App.2002). We will not substitute our judgment for that of the jury on questions of fact. *Id.* Instead, we determine only (a) whether there exists any reasonable evidence supporting the claim; and (b) if such evidence does exist, whether the inference supporting the claim can be drawn without undue speculation. *Id.* (citing *Faulk v. N.W. Radiologists, P.C.*, 751 N.E.2d 233, 238 (Ind.Ct.App. 2001), *trans. denied*). We consider the evidence in the light most favorable to the nonmoving party. *Id.*

B. The DNR's and the Officers' Motion for Directed Verdict

■■■ The DNR and the officers contend that the trial court improperly denied their Motion for Directed Verdict, filed at the end of Young's case. They contend that Young's failure to exhaust administrative remedies deprived the trial court of subject matter jurisdiction over Young's state law claims.

■■■ Indiana law provides an administrative appeals process to DNR employees who are discharged, demoted, or suspended. Ind.Code § 14–9–8–14(b). Any em-

ployee dissatisfied with the final agency action may then seek judicial review. Ind. Code 14–9–8–14(c).[3] Accordingly, the DNR and the officers argue that Young needed to exhaust administrative remedies before pursuing the matter in the trial court.

In addition, the DNR and the officers state that Young had available the state employee grievance procedures in the State Personnel Administration Act. Ind. Code § 4–15–2–35. This Act sets up a five-step process for addressing grievances of any state employee if his status of employment is involuntarily changed or if he deems conditions of employment to be unsatisfactory. These steps include involvement by an immediate supervisor, an intermediate supervisor, the agency head, the state personnel director, and finally the State Employees Appeals Commission. The DNR and the officers contend that judicial review was unavailable to Young until he had gone through each of these steps.

Young participated in a predeprivation hearing on July 28, 1996. When the agency's decision was issued ordering him to be discharged, the DNR and the officers contend that Young should have pursued his administrative remedies even though the order provided the necessary appeal information.

The DNR and the officers direct our attention to *Indiana State Dep't of Welfare, Medicaid Div. v. Stagner*, 410 N.E.2d 1348 (Ind.Ct.App.1980). In *Stagner*, a Medicaid provider sought judicial review of the agency's denial of claims for reimbursement. This court first noted that it is well settled that resort to the judicial process must ordinarily be postponed until administrative remedies capable of rectifying the claimed error have been pursued to finality. *Id.* at 1351 (citing *Reidenbach v. Bd. of Sch. Trustees of W. Noble Sch. Corp.*, 398 N.E.2d 1372 (Ind.Ct.App.1980)). However, we also noted that we do not apply this rule mechanistically. Rather, in determining whether or not a party should be allowed to bypass available administrative channels, we consider various factors reflecting the policies advanced by the exhaustion doctrine. *Id.* (citing *Wilson v. Bd. of Ind. Employment Sec. Div.*, 270 Ind. 302, 385 N.E.2d 438 (1979), *cert. denied*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979)). The factors relevant to this appeal are: (1) the character of the question presented and the competency of the administrative agency to answer that question; (2) the avoidance of premature interruption of the administrative process in recognition of the interest of the agency in developing a factual record upon which to exercise its discretion and apply its expertise without the threat of litigious interference; (3) the interest in permitting an agency to correct its own errors, a process by which unnecessary judicial proceedings are obviated; and (4) the avoidance of deliberate or frequent flouting of established administrative processes. *Id.* Balanced against these considerations is the extent of imminence or harm to the party if required to pursue administrative remedies. *Id.* After performing this balancing test, this court held that the provider's failure to exhaust administrative remedies precluded judicial review of Medicaid's denial of payment. *Id.* at 1353–54.

---

**3.** Although personnel actions normally are excepted from the provisions of Indiana's Administrative Orders and Procedures Act, personnel actions taken for cause are subject to the Act. DNR's administrative rules specifical- ly state that a disciplinary order entered after a predeprivation hearing is a personnel action taken for cause as described under Indiana Code section 4–21.5–2–5(4). *See* 310 IAC 1.2–5–2(e).

In *Turner v. City of Evansville*, 740 N.E.2d 860 (Ind.2001), our supreme court addressed the exhaustion issue when it reviewed the case of a police officer who filed three separate administrative appeals of disciplinary actions against him, then filed a lawsuit and obtained an injunction that prevented the agency from conducting administrative hearings. The trial court granted summary judgment for defendants and this court affirmed, but on transfer the supreme court vacated the decision and held that the police officer's failure to exhaust available administrative remedies deprived the trial court of jurisdiction over his claims:

> The reasons for requiring a party to seek administrative remedies are well established. Premature litigation may be avoided, an adequate record for judicial review may be compiled, and agencies retain the opportunity and autonomy to correct their own errors. Even if the ground of complaint is the unconstitutionality of a statute, which may be beyond the agency's power to resolve, exhaustion may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues.

*Id.* at 862 (citation omitted).

Recently, in *Abner v. Dep't of Health of the State of Ind.*, 777 N.E.2d 778 (Ind.Ct. App.2002), *trans. denied*, this court addressed a situation where state employees filed a complaint against the state to recover unpaid overtime compensation. The trial court found that it lacked subject matter jurisdiction to adjudicate the employees' claims because the employees had failed to comply with the mandatory administrative remedies within the State Personnel Administrative Act, codified at Indiana Code section 4–15–2–35. This court affirmed the trial court's dismissal of the employees' claim, stating:

> Employees are only entitled to judicial review of their claim "after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." [Ind.Code] § 4–21.5–5–4. Accordingly, the trial court did not err by dismissing Employees' claim for lack of subject matter jurisdiction.

*Id.* at 785.

The DNR and the officers contend that DNR's administrative process was capable of investigating the charges against Young and had the expertise to determine whether his conduct violated agency rules. Relying on *Turner*, the DNR and the officers state that, even where a complaint raises constitutional issues, as Young's did, administrative remedies must be exhausted because administrative action may resolve the case on other grounds without confronting broader legal issues. *Turner*, 740 N.E.2d at 862 (citation omitted).

Young asserts that the trial court correctly asserted jurisdiction in this case despite the alleged failure to exhaust administrative remedies. First, relying on *Wilson*, Young contends that our supreme court held that a plaintiff could bring a constitutional challenge to an agency without exhausting her administrative remedies. 385 N.E.2d at 441. The court stated:

> It is true, as a general rule, that no one is entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. However, this rule should not be applied mechanistically.... In the present case, the question presented is of constitutional character. With all due respect, we think that the resolution of such a purely legal issue is beyond the expertise of the Division's administrative

channels and is thus a subject more appropriate for judicial consideration.

*Id.*

Young's reliance on *Wilson* is misplaced. The court noted first that Wilson's "complaint did not raise as an issue the denial of her individual claim for benefits. Rather, the gist of her action was a constitutional challenge to the procedures employed by the Division in suspending and terminating benefits." *Id.* Wilson's claim was an attack on the constitutionality of the process used by the agency in suspending and terminating benefits. Young's complaint, rather, although involving constitutional issues, is an issue of his individual employment termination. Additionally, because Wilson was making a constitutional challenge to the procedures, the court held that the issues were purely legal. Here, however, because Young is challenging the constitutionality of his own employment termination rather than the constitutionality of the termination procedure, there are factual issues also involved. Therefore, *Wilson* is not instructive.

Young also relies on *Indiana Dep't of Highways v. Dixon,* 541 N.E.2d 877 (Ind. 1989). In *Dixon,* our supreme court held that a maintenance worker could bring a First Amendment claim against the department even though he had not raised this constitutional claim in the proceedings before the agency. *Id.* at 882. Young cites *Dixon* for the argument that, like the appellant in *Dixon,* Young raises a fundamental constitutional claim that is beyond the expertise, competency, and authority of the agency. Young argues that there is no possibility that the agency could have resolved his claims without addressing the constitutionality of the DNR's and the officers' actions.

We are unconvinced by Young's argument. Although Young raises constitutional issues which may be beyond the scope of the agency, there are factual issues relating to his termination which may have been resolved by the agency's administrative procedures. As stated in *Turner,*

> Even if the ground of complaint is the unconstitutionality of a statute, which may be beyond the agency's power to resolve, exhaustion may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues.

740 N.E.2d at 862.

Young contends that *Turner* is distinguishable because that case' dealt with the constitutionality of a statute where the present case deals with the constitutionality of an agency action. However, we see this as a distinction without a difference. The heart of Young's case is that the DNR and the officers should not have terminated his employment. Therefore, Young's failure to exhaust administrative proceedings divested the trial court of subject matter jurisdiction over his state law claims. *See Abner,* 777 N.E.2d at 785.[4]

Therefore, we hold that the trial court should not have asserted jurisdiction over Young's state law claims. Consequently, Young's state law claims are dismissed and the jury award thereon is vacated.[5]

---

**4.** The DNR and the officers also raise the issue of whether Young raised an issue of public concern that was entitled to state constitutional protection. However, as we have found that the trial court did not have jurisdiction over Young's state law claims because he failed to exhaust administrative remedies, we need not reach this issue.

**5.** The DNR and the officers argue that the $115,000.00 jury award on Young's state law claims against the DNR was improper because Indiana courts have not recognized a private cause of action for damages under the Indiana Constitution. As we have vacated the jury award and reversed on Young's state law claims, we need not reach this issue.

### III. Petition for Costs and Award of Attorney's Fees

#### A. Standard of Review

██ ██ Generally, courts review a trial court's award of attorney's fees under 42 U.S.C. section 1988 for an abuse of discretion. *Jaffee v. Redmond,* 142 F.3d 409, 412 (7th Cir.1998). However, "when a trial court denies attorney's fees to a prevailing party under section 1988 as a result of applying a principle of law, the justifications for the generally deferential standard of review are absent." *Id.* In such a situation, appellate courts review the denial of attorney's fees de novo as with all questions of law. *Id.*

#### B. Young's Costs and Attorney's Fees

██ Young contends that the trial court erred in not awarding him costs and attorney's fees. Young contends that the threshold question is whether he has succeeded on any significant issue in litigation and achieved some of the benefit he sought in bringing suit. *See Texas Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). At a minimum, to be considered a prevailing party within the meaning of section 1988, Young must be able to point to a resolution of the dispute which changes the legal relationship between himself and the DNR. *Id.*

Section 1988 provides, in pertinent part: In any action or proceeding to enforce a provision of [section 1983] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Young contends that he was a prevailing party within the meaning of section 1988. He asserts that he prevailed on the most significant issues in the litigation in that the jury found that the DNR and the officers unlawfully terminated him in retaliation for exercising his state and federal constitutional right to petition the government for redress of grievances. As a result, the jury awarded Young $115,000.00 in damages, a sum equal to approximately two years of back pay for Young. Additionally, Young argues that the finding of liability alters the legal relationship between the parties because Young can now represent that he was unlawfully terminated by the DNR, not terminated for conduct unbecoming an officer as the DNR initially stated following Young's termination.

██ Generally, in order to obtain an award of attorney fees, plaintiffs must prevail on the merits of their claims. *See Kentucky v. Graham,* 473 U.S. 159, 163, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114, 120 (1985). However, plaintiffs may be considered prevailing parties without obtaining a favorable final judgment following a full trial on the merits. Plaintiffs may prevail, for example, by consent decree or settlement which grants them the relief sought in bringing suit. *See, e.g., Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

The United States Supreme Court has addressed the issue of what constitutes a "prevailing party" for purposes of section 1988. In *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), Justice Thomas, writing for the majority, stated:

[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.

Otherwise the judgment or settlement cannot be said to affect the behavior of the defendant toward the plaintiff. Only under these circumstances can civil rights litigation effect the material alteration of the legal relationship of the parties and thereby transform the plaintiff into a prevailing party. In short, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

*Id.* at 111–12, 113 S.Ct. 566 (citations omitted).

As we have found that Young waived his objections to the jury verdicts, they stand as handed down by the jury. Additionally, we have held that the trial court could not exercise jurisdiction over Young's state law claims because Young failed to exhaust the administrative remedies available to him. Therefore, the officers were found to have violated Young's constitutional rights under section 1983 and the federal constitution. Additionally, the DNR was found to have violated Young's constitutional rights under the federal constitution. However, the jury awarded no damages against the parties for these violations. Finally, Young filed a Motion to Correct Errors, requesting reinstatement and an injunction against the officers to prevent them from dismissing him in violation of his constitutional rights. However, the tri-

al court denied reinstatement and the injunction and Young did not appeal this decision. Therefore, Young cannot be considered a prevailing party under section 1988 as he has not changed the legal relationship between himself and the DNR or the officers.

*Conclusion*

Because Young was afforded the opportunity to object to the jury verdicts as being inconsistent before the jury was dismissed and he failed to do so, his objections to the jury verdicts are waived. Additionally, because Young failed to exhaust the administrative remedies available to him, we hold that the trial court did not have jurisdiction over the state law claims and vacate the jury verdicts for those claims. Finally, because Young did not alter the legal relationship between himself and the DNR or the officers, we hold that the trial court correctly denied attorney's fees and costs.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

FRIEDLANDER and VAIDIK, JJ., concur.